UNITED STATES of America, Appellee,

v.

Alan HEYMAN, Defendant-Appellant.

No. 1377, Docket 86–1129.

United States Court of Appeals,
Second Circuit.

Submitted June 5, 1986.

Decided June 27, 1986.

Richard Rosenberg, New York City, for defendant-appellant.

Linda Imes, Asst. U.S. Atty. (Rudolph Giuliani, U.S. Atty. for S.D.N.Y., and Bruce Green, Asst. U.S. Atty., of counsel), for appellee.

Before KAUFMAN, VAN GRAAFEILAND and MINER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

We are asked to determine whether a statute proscribing certain conduct by financial institutions was properly applied in prosecuting an employee who caused his brokerage firm to unwittingly violate the statute. We have previously held that one who causes another to commit a crime may be punished as a principal pursuant to federal law, although the substantive criminal statute does not apply to him by its terms. Accordingly, we affirm the conviction.

Alan Heyman, an account executive with Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"), shared responsibility for several customer accounts with another account executive, Martin Leyton. One of them, jointly held by Sam Silber and his wife, Evelyn, was opened on July 21, 1981. In February 1982, the Silbers sought to deposit a large amount of cash into their account with Merrill Lynch. Having failed to report the cash as income to the Internal Revenue Service, however, the Silbers also did not wish Merrill Lynch to report the deposit to the IRS.[1] Federal law provides that a financial institution must file a Currency Transaction Report ("CTR") with the IRS for all transactions involving amounts over $10,000. 31 U.S.C. § 5313.[2]

To avoid the filing of a CTR, Heyman and Leyton devised a scheme to circumvent the requirements of §§ 5313 and 5322 of the Bank Secrecy Act, 31 U.S.C. § 5311 *et*

*seq.* (the "Act"). On February 11, 1982, Leyton opened two new accounts, one in the name of Sam Silber and the other in the name of Evelyn Silber. Less than one week later, Heyman opened an account bearing the name of the Silbers' daughter, Pearl Schmutter. On February 16, Heyman deposited $9,900 into each of these three accounts as well as into the Silbers' joint account. Accordingly, the total cash invested in these four accounts on February 16 was $39,600.

On May 5, 1982, Heyman deposited $9,000 into the joint account of Evelyn and Sam Silber, and $8,000 into Sam Silber's individual account, again avoiding the submission of a CTR with respect to these transactions. A few days later, Heyman transferred the $8,000 from Sam Silber's account to the account Sam held jointly with his wife.

Heyman undertook his most flagrant attempt to sidestep the reporting requirements on July 26, 1982. On that day, he received a briefcase from Sam Silber containing $70,000 in cash and brought it to his office at Merrill Lynch. There Heyman opened the following joint and individual accounts in the names of Silber and his relatives:

Susan Mark/Pearl Schmutter
Sam Silber/Susan Mark
Evelyn Silber/Susan Mark
Sam Silber/Pearl Schmutter
Evelyn Silber/Pearl Schmutter
Susan Mark

Heyman deposited $7,000 into each of the six new accounts and the four pre-existing accounts. The following day, at Heyman's instructions, all of the money was transferred into the joint account of Sam and Evelyn Silber. Because each of the deposits on July 26 involved amounts less than $10,000,

---

**1.** This practice is often described as "money laundering"—"[a] process by which one conceals the existence, illegal source, or illegal application of income, and then disguises that income to make it appear legitimate." *Organized Crime and Money Laundering*, Record of Hearing v. President's Commission on Organized Crime (March 14, 1984).

**2.** The back of each Currency Transaction Report form contained the following statement:

Multiple transactions by or for any person which in any one day total more than $10,000 should be treated as a single transaction, if the institution is aware of them.

Merrill Lynch did not file CTRs for the transactions.

As a result of these deposits and a similar transaction structured by Heyman and Leyton for another client,[3] the two account executives were questioned by counsel for Merrill Lynch in March 1983. Leyton was subsequently dismissed by Merrill Lynch, and he agreed to testify for the Government pursuant to a cooperation agreement. Heyman was indicted on charges of conspiracy, 18 U.S.C. § 371, and for causing a financial institution to fail to file a Currency Transaction Report for domestic currency transactions involving more than $100,-000 in a twelve-month period. 31 U.S.C. §§ 5313(a) and 5322(b).[4] After a five-day jury trial, Heyman was convicted on both counts, and he was sentenced to concurrent terms of unsupervised probation for three years.

## DISCUSSION

Concerned that the nation's financial institutions were serving a larger and increasingly important role in the laundering of unreported income or illegally obtained funds, Congress enacted the Bank Secrecy Act in 1971. The Act provides for "certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." The Secretary of the Treasury is authorized to prescribe by regulation specific recordkeeping and reporting requirements for financial institutions. *California Bankers Ass'n v. Schultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). Pursuant to that authority, the Secretary implemented 31 C.F.R. § 103.22, requiring all financial institutions to file a report for every currency transaction over $10,000.

On appeal, Heyman contends that 31 U.S.C. § 5313 and the regulations promulgated thereunder proscribe only certain conduct by financial institutions, and that an individual cannot be convicted of violating the terms of the Act. The Government counters that Heyman's conviction is firmly supported by 18 U.S.C. § 2(b), which provides that one who willfully causes another to commit a crime is punishable as a principal.

In weighing the merits of these arguments, we acknowledge, and the Government concedes, that Heyman did not have a legal duty to file CTRs in his capacity as an account executive at Merrill Lynch. The cashier's department carried that responsibility. We agree with the Government, however, that criminal liability may attach to Heyman's actions through the operation of 18 U.S.C. § 2(b), which provides:

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against

3. In March 1982, Heyman created a new account in the name of Henry Cohen and deposited $9,500 into that account. Another $9,500 was deposited into a pre-existing joint account of Henry and Carolyn Cohen. The following day, the $9,500 in the Henry Cohen account was transferred to the joint account, the net effect being a deposit of $19,000 into the joint Cohen account. No CTR was filed in this transaction.

4. Title 31 U.S.C. § 5313 provides in relevant part:

When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments), in an amount, denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall

file a report on the transaction at the time and in the way the Secretary prescribes.

31 U.S.C. § 5322 provides in relevant part: (b) A person willfully violating this subchapter or a regulation prescribed under this subchapter ... while violating another law of the United States or as part of a pattern of illegal activity involving transactions of more than $100,000 in a 12-month period, shall be fined not more than $500,000, imprisoned for not more than 5 years, or both.

31 C.F.R. Part 103.22(a) (1982) provides: Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through or to such financial institution, which involves a transaction in currency of more than $10,000. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.

the United States, is punishable as a principal.

The proper application of § 2(b) has been the subject of considerable discussion and debate. We have previously held that pursuant to § 2(b) an individual can be held culpable for causing a third person to commit a criminal act where the defendant lacks the legal capacity to commit the substantive crime. *United States v. Ruffin*, 613 F.2d 408 (2d Cir.1979); *United States v. Wiseman*, 445 F.2d 792 (2d Cir.1971), *cert. denied*, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1972). In *Ruffin*, the defendant was a personal friend of Olga Defreitas, the director of a federal agency. Ruffin persuaded Defreitas fraudulently to procure approval for the agency to continue renting defendant's unfit premises. The defendant was convicted of fraud in obtaining federal financing, although the relevant statute proscribed certain acts only if committed by a "director" or an "employee" of a federal agency. Although Defreitas was acquitted of all counts, Ruffin was found guilty pursuant to § 2(b). In affirming the conviction, Judge Mansfield noted that § 2(b), as amended in 1951, represented an effort by Congress to expand the scope of criminal liability "so that a person who operates from behind the scenes may be convicted even though he is not expressly prohibited by the substantive statute from engaging in the acts made criminal by Congress." 613 F.2d at 413.

*Ruffin* reaffirmed our previous holding in *United States v. Wiseman, supra,* that an individual could be found guilty of willfully causing an innocent intermediary to commit a crime, where the intermediary had the legal capacity to commit the offense but the defendant did not. In *Wiseman,* two private process servers had willfully caused the Clerk of the New York City Civil Court to enter default judgments against parties who in fact had not been properly served. The applicable criminal statute made such acts a crime only if committed "under color of ... law," a category which included the Court Clerk but not the defendants. This Court affirmed the convictions, reasoning that "if defendants 'willfully caused' the Clerk to enter such judgments, defendants would be culpable to the same extent as the Clerk would be assuming the Clerk had the same knowledge as was possessed by defendants as to the falsity of the papers." 445 F.2d at 795.

Our holdings in both *Ruffin* and *Wiseman* relied on the 1951 amendment of § 2(b), which broadened the scope of criminal liability. Before the amendment, § 2(b) provided:

> Whoever willfully causes an act to be done which if directly performed by him would be an offense against the United States, is punishable as a principal.

In 1951, Congress amended § 2(b) to impute criminal liability to anyone who "willfully causes an act to be done which if directly performed by him *or another* would be an offense against the United States." (emphasis added). Both *Ruffin* and *Wiseman* held that the addition of the words "or another" reflected a desire by Congress to hold criminally liable those who cause others to commit crimes, without regard to the guilt or innocence of the intermediary or the legal capacity of the defendant to commit the crime.

The application of this principle is dispositive in this case. Heyman himself had no legal responsibility to file CTRs. By structuring his customers' deposits so that no single transaction involved an amount greater than $10,000, however, Heyman willfully caused Merrill Lynch to fail to file the appropriate CTRs. Had Merrill Lynch, a financial institution, structured the transactions as Heyman did, it would have violated federal law. Because § 2(b) holds liable as a principal any person who willfully causes an act to be done which if directly performed by another (here, Merrill Lynch) would be a federal offense, Heyman is criminally liable for violating 31 U.S.C. §§ 5311 and 5322.

Heyman nonetheless cites cases in which courts have determined that a bank customer cannot be prosecuted pursuant to §§ 5313 and 5322 of the Bank Secrecy Act.

See, e.g., United States v. Anzalone, 766 F.2d 676 (1st Cir.1985) (defendant purchased twelve cashier's checks from bank over a two-week period); United States v. Varbel, 780 F.2d 758 (9th Cir.1986) (defendant purchased six cashier's checks from different banks); United States v. Dela Espriella, 781 F.2d 1432 (9th Cir.1986) (defendant's agents purchased cashier's checks from 19 different banks). We find these cases inapposite to Heyman, and therefore unpersuasive. The defendants in Anzalone, Varbel, and Dela Espriella were bank customers who purchased several cashier's checks, all for sums less than $10,000 individually but with cumulative totals exceeding $10,000. The checks in Varbel and Dela Espriella, however, were purchased from several different banks. Because each of the banks was involved in a currency transaction of less than $10,000, no single financial institution could have been guilty of violating the Act. Similarly, in Anzalone, most of the transactions occurred on different days, albeit with the same bank. Because transactions occurring on different days are not considered to be a single transaction, the bank would not have been required to file a CTR. Accordingly, there was no reason to impute liability to the defendants pursuant to § 2(b).[5]

By contrast, Heyman structured his customers' deposits by dividing large sums into smaller portions and depositing them into newly-created accounts on the same day. Because Merrill Lynch would have been required to file a CTR for cumulative deposits in a single day, this case is distinguishable from those cited by Heyman.

See Anzalone, 766 F.2d at 683–84 (Aldrich, J., concurring ).[6]

Finally, the requirement of § 2(b) that a defendant's acts be "willful" provides adequate protection for individuals who might unwittingly stumble into a violation of federal law. Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 reh'g denied, 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982) (a scienter requirement may mitigate a law's vagueness with respect to adequacy of notice that specified conduct is proscribed); Boyce Motor Lines v. United States, 342 U.S. 337, 342, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952) ("requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid"). We believe this lends persuasive support to the large number of cases holding that any individual, including a customer, may be held criminally liable for willfully causing a financial institution to fail to file CTRs. See e.g., United States v. Sans, 731 F.2d 1521, 1531–32 & n. 12 (11th Cir. 1984), cert. denied, — U.S. —, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985); United States v. Puerto, 730 F.2d 627, 632–33 (11th Cir. 1984), cert. denied, — U.S. —, 105 S.Ct. 162, 83 L.Ed.2d 98 (1985); United States v. Tobon-Builes, 706 F.2d 1092, 1099–1101 (11th Cir.1983); United States v. Massa, 740 F.2d 629, 645 (8th Cir.1984), cert. denied, — U.S. —, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); United States v. Richter, 610 F.Supp. 480, 487–90 (D.C.Ill.1985);

---

5. Three of the cashier's checks in Anzalone were purchased on the same day from the same bank. The total value of the three checks was more than $25,000, thereby requiring the bank to file a CTR. The government, however, did not distinguish between the single-day purchases and the checks obtained over a period of several days. The court, in turn, did not address the issue whether a conviction based only on the single-day purchases would have been proper. 766 F.2d at 684 (Aldrich, J., concurring ).

6. One circuit has held that employees, as distinguished from customers, of financial institutions have a legal and fiduciary duty to disclose the true nature of the transactions to the institution. United States v. Thompson, 603 F.2d 1200 (5th Cir.1979). We find it unnecessary, however, to distinguish between a customer and an employee for the purpose of determining criminal liability pursuant to the Act. The plain language of § 2(b) gives notice that one who willfully causes another to commit a crime is punishable as a principal, regardless whether he himself would be considered a principal pursuant to the relevant criminal statute.

*United States v. Konefal,* 566 F.Supp. 698 (N.D.N.Y.1983).

## CONCLUSION

Accordingly, the judgment of the district court is affirmed.