**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David RICHESON, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mahmood UL–HASSAN,**
**Defendant-Appellant.**

**Nos. 86–5122, 86–5123.**

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1987.
Decided July 23, 1987.

Harry Levy (Robert B. Schulman, Schulman & Treem, P.A., William S. Little, Baltimore, Md., on brief), for defendants-appellants.

Robert Neal McDonald, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., Donna H. Triptow, Asst. U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before HALL and WILKINS, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINS, Circuit Judge:

David Richeson and Mahmood Ul-Hassan appeal their convictions for conspiracy to import heroin, importation of heroin, and interstate travel in aid of a criminal enterprise. Richeson also appeals his convictions for conspiracy to distribute heroin, distribution of heroin, investment of illicit drug profits, and concealment of material facts regarding his banking transactions. In addition to challenging various evidentiary rulings by the trial court, Richeson asserts that his banking transactions did not constitute a criminal violation and Ul-Hassan contends that the evidence was insufficient to convict him of conspiracy to import and importation. We affirm the convictions.[1]

## I.

In 1982 Richeson established an import/export management company in Baltimore, Maryland which was initially used as a cover for laundering funds on the Nigerian black market. In 1984 he began importing heroin from Pakistan with the financial backing of Charles Butler, alleg-

---

1. We find that the evidentiary contentions are without merit and do not warrant discussion.

edly the head of a narcotics distribution network in Baltimore.

In July, August and November, 1984, Richeson and an employee, Dawar Shaikh, made three trips to Pakistan and purchased a total of over eight kilos of heroin from Mahmood Ul-Hassan.[2] On each trip, Shaikh flew to Toronto, Canada with the heroin while Richeson returned to Baltimore and then drove to Toronto to pick him up.

After his arrest in May 1985, Shaikh agreed to cooperate with law enforcement authorities and made a controlled delivery of sham heroin to Richeson on May 16, 1985. Richeson was arrested after delivering the heroin to Butler. Butler eluded the police and remained at large at the time of this trial.

Shaikh continued to work undercover and arranged for Ul-Hassan to travel to the United States to negotiate a heroin deal with "new purchasers" who were actually undercover law enforcement agents. Ul-Hassan entered the United States in mid-October. He met with Shaikh and the undercover agents on numerous occasions in New York and Baltimore to negotiate the purchase of heroin from Pakistan. Ul-Hassan was arrested on November 9, 1985 when he attempted to return to Pakistan.

## II.

▮ Under the Currency Transaction Reporting Act, 31 U.S.C.A. § 5311, *et seq.* (West 1983 and Supp.1987) [Reporting Act], the Secretary of the Treasury is authorized to require domestic financial institutions and other participants in transactions for the payment, receipt, or transfer of United States currency, to report such transactions to the Secretary. 31 U.S.C.A. § 5313 (West 1983). The Secretary requires financial institutions to file currency transaction reports [CTR's] on transactions in excess of $10,000.00.[3] Treas.Reg. § 103.22(a)(1) (1986). Multiple transactions by or for a person with one bank on a single day which total over $10,000.00 should be reported as a single transaction, if the financial institution is aware of them. Treasury Department Form 4789 (1980).

The money laundering scheme and the heroin operation generated large amounts of cash which Richeson deposited into the company account at the First National Bank of Maryland. In order to avoid the filing of CTR's, he structured total daily deposits of over $10,000.00 into multiple deposits of less than $10,000.00 which he made with separate tellers or separate branches.

Based on these structured transactions, the government charged Richeson with eight counts of knowingly and willfully concealing and causing the concealment of material facts within the jurisdiction of the United States Treasury Department. 18 U.S.C.A. § 1001 (West 1976), 18 U.S.C.A. § 2(b) (West 1969). At the close of his case, Richeson moved for a judgment of acquittal on these counts, asserting that he had no legal duty to disclose the structured transactions. The motion was denied, and he was convicted on five counts.

Richeson does not contest the fact that he purposely structured his currency transactions to avoid the filing requirements. Rather, he asserts that the imposition of criminal liability for his actions is a violation of due process. He urges this court to follow those circuits which hold that imposition of criminal sanctions for such activities violates the fair warning requirement of the due process clause since the Reporting Act imposes no duty on the individual to disclose structured transactions. *United States v. Larson,* 796 F.2d 244 (8th Cir.1986); *United States v. Varbel,* 780 F.2d 758 (9th Cir.1986); *United States v. Anzalone,* 766 F.2d 676 (1st Cir.1985). We are unpersuaded by the reasoning of these opinions and follow those circuits which uphold such convictions. *United States v. Heyman,* 794 F.2d 788 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *United States v. Cook,* 745 F.2d 1311 (10th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d

---

**2.** Richeson and Ul-Hassan were acquitted on counts relating to the August transaction.

**3.** Casinos are also required to file similar reports. Treas. Reg. § 103.22(a)(2) (1986).

347 (1985); *United States v. Tobon-Builes,* 706 F.2d 1092 (11th Cir.1983).

### III.

The purpose of the Reporting Act is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C.A. § 5311 (West 1983). Individuals cannot circumvent the reporting requirements by intentionally structuring their currency transactions to cause financial institutions not to file required CTR's. *United States v. Thompson,* 603 F.2d 1200, 1203 (5th Cir.1979).

In 1986, Congress amended the Reporting Act by adding Section 5324 which specifically prohibits individuals from causing or attempting to cause a domestic financial institution to fail to file a required CTR or to file a CTR that contains a material omission or misstatement of fact for the purpose of evading the reporting requirements. Anti-Drug Abuse Act of 1986, Pub.L. No. 99–570, Title I, § 1354(a), 100 Stat. 3207, 3207–22 (1986); 31 U.S.C.A. § 5324 (West Supp.1987). It also prohibits individuals from structuring or attempting to structure any transaction with one or more financial institutions for the purpose of evading the reporting requirements.

However, it is clear that prior to enactment of Section 5324, individual customers could be held criminally liable under Sections 1001 and 2(b) for willfully causing financial institutions not to file required CTR's. *Tobon-Builes,* 706 F.2d at 1101; *see also Heyman,* 794 F.2d at 791; *Cook,* 745 F.2d at 1315.

Section 1001 prohibits the willful and knowing falsification or concealment of a material fact in any matter within the jurisdiction of any federal department or agency. Ordinarily, a defendant may not be convicted of concealment unless the defendant had a duty to disclose. *United States v. Irwin,* 654 F.2d 671, 678–79 (10th

Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982).

Although the Secretary is authorized under the Reporting Act to require the financial institution or "any other participant in the transaction" to file a currency transaction report, only financial institutions are required to do so. Thus, Richeson was under no legal duty to report his structured transactions.[4] Further, the financial institution which was obligated to file CTR's is not guilty of criminal concealment for its failure to do so since it lacked knowledge of the structured nature of the transactions. However, by operation of Section 2(b), Richeson's willful intent to cause a concealment, combined with the financial institution's duty to report and its innocent failure to report, constitute the elements of actionable concealment under Section 1001. *Tobon-Builes,* 706 F.2d at 1101.

Section 2(b) provides that a person who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." This section is intended "to impose criminal liability on one who causes an intermediary to commit a criminal act, even though the intermediary who performed the act has no criminal intent and hence is innocent of the substantive crime charged...." *Id.* at 1099. Therefore, although Richeson lacked the legal capacity to commit the crime of concealment by himself, he is liable as a principal under Section 2(b) for willfully causing the innocent financial institution not to file the required report.

### IV.

 The government charged Ul-Hassan, Richeson and Butler with conspiracy to import heroin into the United States from the summer of 1984 continuously through November 9, 1985. It alleged that Ul-Hassan committed a dozen overt acts from July 16, 1984 through October 30,

---

**4.** We note that the reporting requirements of the Reporting Act were subsequently supplemented by the addition of Section 6050I to the Internal Revenue Code which requires individuals engaged in a trade or business to report receipt of more than $10,000.00 in cash from one transaction or two or more related transactions. Deficit Reduction Act of 1984, Pub.L. No. 98–369, Title I, § 146(a), 98 Stat. 494, 685 (1984); 26 U.S.C.A. § 6050 (West Supp. 1987).

1985. 21 U.S.C.A. § 963 (West 1981). He challenges the sufficiency of the evidence to support his conspiracy conviction, asserting that the conspiracy ended in May 1985 when Shaikh agreed to cooperate with law enforcement authorities and Richeson was arrested. He contends that any acts proven to have been committed by him after May 1985 could not have been in furtherance of the alleged conspiracy, because law enforcement agents were the only individuals with whom he subsequently dealt. We hold that regardless of whether the conspiracy ended in May 1985, there was sufficient evidence to support his conviction for conspiracy to import heroin.

Proof of the precise temporal scope of a conspiracy is not required to sustain a conspiracy conviction. *See United States v. Cina*, 699 F.2d 853, 859 (7th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). Nor is the government required to prove all the overt acts alleged in a conspiracy count. *United States v. Anderson*, 611 F.2d 504, 510 (4th Cir.1979). To the contrary, a conspiracy conviction will be sustained on proof of only one overt act committed in furtherance of the conspiracy. *Id.* The government offered ample evidence that between the summer of 1984 and May 1985, Ul-Hassan conspired with non-governmental individuals to import heroin into the United States and committed at least one overt act in furtherance of the conspiracy.

### V.

Ul-Hassan also contends that the evidence was insufficient to support his convictions on two counts of importing heroin into the United States from Pakistan in July and November 1984. 21 U.S.C.A. § 952(a) (West Supp.1987), 18 U.S.C.A. § 2 (West 1969). He asserts that there is no evidence that he personally carried the heroin into the United States or that he aided and abetted in the importations by Shaikh and Richeson. We find no merit to this contention and affirm the convictions.

To support a conviction for importation of a controlled substance, the government must prove that the substance was import-

ed knowingly and willfully, and that the defendant willfully associated himself with the importation venture. *United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir.1984). A conviction for aiding and abetting importation of a controlled substance will be sustained upon proof that the defendant associated himself with the importation venture and that he sought by his actions to make it succeed. *See Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949).

Proof of participation in the actual transportation of an illegal drug into the United States is not required, "only participation at some stage accompanied by knowledge of the result [importation into the United States] and intent to bring about that result." *United States v. Hathaway*, 534 F.2d 386, 399 (1st Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976). The importation convictions are supported by substantial evidence that Ul-Hassan sold heroin to Richeson and Shaikh with knowledge that it was to be imported into the United States.

AFFIRMED.