836 F.2d 547
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur B. JACOBY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph J. PAVLICO, Defendant-Appellant.
 Nos. 86-5677, 86-5680.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 7, 1987.
Decided Dec. 16, 1987.
 
 Harold Johnson Bender (Bender, Lawson & Howerton on brief), Scott Herbert Ray, Jr. for appellants.
 Max Oliver Cogburn, Jr., Chief Assistant United States Attorney (Charles R. Brewer, United States Attorney on brief) for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, HARRISON L. WINTER, Chief Judge, and WILKINS, Circuit Judge.
 PER CURIAM:
 
 
 1
 Arthur Jacoby and Joseph Pavlico appeal from convictions arising from a check laundering scheme. They assert that their structured bank transactions were not illegal and that the trial court erred in charging the jury on reasonable doubt. We affirm.
 
 I.
 
 2
 In 1983 and 1984 nine checks totalling over $1,500,000.00 were stolen from the Jerrold Division of General Instrument Corporation. After passing through several intermediaries, the checks finally were delivered to Jacoby who agreed to cash them for a fee.
 
 
 3
 Jacoby endorsed five of the checks and deposited them in his corporate accounts. He also arranged for the other four checks to be endorsed and deposited by a business associate. Checks were then drawn for smaller amounts and cashed by Jacoby's employees and business associates. Pavlico was an employee of Jacoby who often arranged for the checks to be drawn and collected the money after they were cashed.
 
 
 4
 Over 300 checks were cashed of which 299 were for amounts under $10,000.00. On numerous occasions, multiple checks totalling more than $10,000.00 were cashed at the same bank on the same day. Due to the manner in which the transactions were structured, the bank did not file reports with the Internal Revenue Service as required under the Currency Transaction Reporting Act, 31 U.S.C.A. 5311 et seq. (West 1983 & Supp. 1987). There was testimony at trial that Jacoby was aware of the filing requirements and structured the transactions to avoid them.
 
 
 5
 In July 1986 Jacoby and Pavlico were indicted on one count of conspiracy to violate the false statement provisions of 18 U.S.C.A. 1001 (West 1976) by structuring currency transactions to circumvent the reporting requirements of 31 U.S.C.A. Sec. 5313. They were also charged with ten substantive counts of causing a financial institution to conceal a material fact within the jurisdiction of the Internal Revenue Service, by willfully causing multiple checks of less than $10,000.00 each, but totalling over $10,000.00, to be cashed at separate branches of the same bank on the same day. 18 U.S.C.A. 1001; 18 U.S.C.A. Sec. 2 (West 1969). Pavlico was charged separately on an additional substantive count under sections 2 and 1001. In addition, they were each charged with three counts of wire fraud under 18 U.S.C.A. Sec. 1343 (West 1984), and one count of inducing an individual to make a materially false statement to a federally insured bank, 18 U.S.C.A. 1014 (West 1976 & Supp. 1987). Jacoby was convicted on all counts and Pavlico was convicted on the conspiracy count and nine substantive counts.
 
 II.
 
 6
 Defendants contend that they were not obligated under the Reporting Act to inform the bank of the nature of the structured currency transactions; therefore, they could not be convicted of concealment under section 1001 or aiding and abetting under section 2. This court recently addressed the issue of criminal liability for such structured transactions in United States v. Richeson, 825 F.2d 17 (4th Cir. 1987), holding that "by operation of Section 2(b), [Defendant's] willful intent to cause a concealment, combined with the financial institution's duty to report and its innocent failure to report, constitute the elements of actionable concealment under Section 1001." Id. at 20 (citing United States v. Tobon-Builes, 706 F.2d 1092, 1101 (11th Cir. 1983)). The facts and issues of this case are indistinguishable; thus, Richeson is controlling.
 
 III.
 
 7
 The trial judge instructed the jury on a definition of reasonable doubt as follows:
 
 
 8
 Few things in life are absolutely certain. To say that you believe something beyond a reasonable doubt is to say that you are confident in your judgment. It does not require you to be absolutely certain. You may have a reasonable doubt about something if you are hesitant to accept it as true after you evaluate the evidence. Defendants assert that the charge was confusing and that no definitional instruction should have been given.
 
 
 9
 This court has repeatedly urged trial courts not to define reasonable doubt unless requested to do so by the jury, due to the risk that the definition will create confusion and impermissibly lessen the burden of proof. United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987). However, attempts at defining reasonable doubt are not per se reversible. Id. Reversal is not required if, considering the entire charge as a whole, the instruction correctly conveys the concept of reasonable doubt. Id.
 
 
 10
 Immediately prior to giving the challenged instruction, the court clearly set forth the requisite burden of proof: "It is the government that brings charges and it is the government that must prove these charges. It must prove them beyond a reasonable doubt." Taken as a whole the charge did not constitute reversible error.
 
 
 11
 AFFIRMED.