**Edward SINCLAIR, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 1006, Docket 71-1368.**

United States Court of Appeals, Second Circuit.

Argued May 28, 1971.

Decided June 21, 1971.

Lawrence Greenapple, New York City, (Otterbourg, Steindler, Houston & Rosen, New York City, on the brief), for petitioner.

Paul Gonson, Asst. Gen. Counsel, Securities and Exchange Commission, Washington, D. C. (Philip A. Loomis, Jr., Gen. Counsel, David Ferber, Sol., Ralph K. Kessler, Atty., and Kathryn B. McGrath, Atty., Securities and Exchange Commission, Washington, D. C., on the brief), for respondent.

Before KAUFMAN, HAYS, and MANSFIELD,* Circuit Judges.

PER CURIAM:

Upon this petition for review we affirm the order of the Securities and Exchange Commission ("Commission") entered on March 24, 1971, after administrative hearings pursuant to §§ 15(b) and 15A of the Securities Exchange Act of 1934, which barred petitioner from further association with any broker or dealer in securities on the ground that he had wilfully violated and aided and abetted violation of the anti-fraud provisions of § 17(a) of the Securities Act of 1933, 15 U.S.C. 77q(a), §§ 10(b) and 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78o(c)(1), and Rules 10b–5, 15c1–2 and 15c1–4 thereunder, 17 C.F.R. §§ 240.10b–5, 240.-15c1–2 and 240.15c1–4(2a–3a).

Sinclair, an order clerk in the trading department of Filor, Bullard & Smyth ("Filor"), a registered broker-dealer, was obligated as a matter of fiduciary duty to use due diligence to obtain the best available price for Filor's customers upon execution of orders placed by them for purchase or sale of securities on the over-the-counter ("OTC") market; and, where a better price was available directly from a dealer in a particular OTC security, Sinclair was not permitted to interpose another broker-dealer at the expense of Filor's customers. W. K. Archer & Co., 11 S.E.C. 635 (1942) affd., 133 F.2d 795 (8th Cir.), cert. denied, 319 U.S. 767, 63 S.Ct. 1330, 87 L.Ed. 1717 (1943); Thomson & McKinnon, Sec. Exch. Act Rel. No. 8310 (May 8, 1968); H. C. Keister & Co., Sec. Exch. Act No. 7988 (1966). There was ample evidence to support the Commission's findings that in 1965 Sinclair made numerous purchases and sales of securities for Filor's customers through the OTC firm of Hoit, Rose & Co. ("Hoit") rather than directly with dealers quoting the securities involved in the daily "Pink Sheets" published by the National Quotation Bureau, Inc. This procedure of interpositioning Hoit between Filor and the executing dealers, or market makers, caused Filor's customers in many transactions to pay higher prices for securities purchased by them, or to receive lower prices for securities sold by them than would have been the case if Sinclair had dealt directly with the

* District Judge of the Southern District of New York, sitting by designation at time of argument.

executing dealer. For instance, in 90% of 189 such interpositions in 1965, Hoit promptly executed the trade at a profit with dealers listed in the Pink Sheets.

There was also substantial evidence supporting the Commission's finding that Sinclair engaged in such interpositioning for the purpose of increasing his own personal commissions at the expense of Filor's customers, for whom he did not obtain the best available prices. This was accomplished by an arrangement whereby reciprocal orders were received by him from Hoit for execution by Filor, upon which Sinclair received 30% of Filor's commissions. In 1965, for instance, approximately 55% of Sinclair's commissions were derived from such reciprocal business flowing from Hoit. Sinclair's fraudulent purpose was further evidenced by the fact that he concealed his interpositioning of Hoit from his supervisors by falsely entering on Filor order tickets the names of brokers other than Hoit as the executing dealers. In a substantial number of transactions the names were those of dealers with whom Hoit placed the transactions at a profit to Hoit.

Sinclair contends that while he interposed Hoit in the transactions, there was nothing wrong with interposition *per se,* and that he used due diligence to obtain the best price for Filor's customers by his securing quotations from other dealers wherever possible. He further seeks to excuse his conduct on the ground that Filor did not have facilities equal to Hoit's for obtaining quotations from brokers appearing in the Pink Sheets. However, substantial evidence supports the Commission's rejection of these contentions. Filor was a larger firm than Hoit and Filor's records reveal that in 1965 it had 20 direct wires to OTC dealers. The speed with which Hoit was able, upon receipt of an order from Sinclair, to obtain a better price from executing dealers, negates Sinclair's contention that he could not do the same.

Our function upon review is not to determine credibility or weight, which was for the Commission to decide, Standard Distributors, Inc. v. FTC, 211 F.2d 7, 12 (2d Cir. 1954), but to decide whether there was substantial evidence to support the Commission's findings. § 25(a), Sec. Exch. Act, 15 U.S.C. § 78y(a). Since there was substantial evidence supporting the Commission's finding that Sinclair's interposition of Hoit was in furtherance of a fraud upon Filor's customers, it becomes unnecessary to decide whether interpositioning, in the absence of financial harm to customers or proof that they were denied the best available market price for their securities, would be improper.

■■ The evidence of Sinclair's falsification of the names of executing brokers on Filor's order tickets is so clearly a violation of the record-keeping requirements of § 17(a) of the 1934 Act and regulations issued thereunder that it hardly deserves comment. The order tickets constituted records which Filor was required to keep as true and accurate memoranda of brokerage transactions to be made available for inspection by representatives of the Commission. See § 17(a) of the 1934 Act, and Rules 17a–3(a) (6), 17 C.F.R. §§ 240.-17a–3(a) (6) and 17a–4(b) (4), 17 C.F.R. § 240.17a–4(b) (4). Although the Commission's rules did not specifically require that the executing brokers' names be put on the order tickets, that information was obviously material and important, and, even assuming no legal obligation to furnish the names, there was an obligation, upon voluntarily supplying that information, to be truthful.

■ We find no merit in the argument that Commissioner Smith had prejudged Sinclair's case by participating in the Commission's decision to accept a Filor settlement offer setting forth certain stipulated facts. The facts were stipulated by the parties solely for the particular settlement, just as is the practice in negotiation of consent decrees. The decision stated that it was not binding on the other respondents. Furthermore, each of the two proceedings met the standards of due process, with each respondent (Filor in one case and Sin-

clair in the other) being represented by competent counsel. The Commission's findings with respect to Sinclair were based upon presentation of evidence before a Hearing Examiner, findings independently made by him on the basis of the proof, and independent review by the Commission after oral argument and submission of briefs. In such a context Commissioner Smith was not called upon to disqualify himself from participation in Sinclair's case.

■ The sanction imposed by the Commission on Sinclair—that he be permanently barred from further association with any broker or dealer in securities—is a harsh one, but in view of the seriousness of the fraud committed by him it was well within the Commission's discretion. Tager v. SEC, 344 F.2d 5, 8–9 (2d Cir. 1965); Hanly v. SEC, 415 F.2d 589, 598 (2d Cir. 1969).