UNITED STATES of America

v.

BANK OF NEW ENGLAND, N.A., et al.

Crim. A. No. 85-381-Z.

United States District Court,
D. Massachusetts.

Jan. 10, 1986.

Willie Davis, Boston, Mass., for James M. McDonough.

Michael Collora, Hemenway & Barnes, Boston, Mass., for Carol A. Orlandella.

Richard K. Donahue, Donahue & Donahue, Lowell, Mass., for Patricia A. Murphy.

John Markham, U.S. Atty., Boston, Mass., for U.S.

Amos Hugh Scott, Choate, Hall & Stewart, Boston, Mass., for Bank of New England, N.A.

D. Lloyd MacDonald, McDermott & Rizzo, Boston, Mass., for Carol S. Cohen.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

A United States grand jury has indicted the Bank of New England ("the Bank"), three employees of the Bank, and one of its customers, charging several violations of federal law in connection with a series of currency transactions and the subsequent investigation thereof. Counts Two through Thirty-Seven charge the Bank and its customer, James V. McDonough, with violations of the Currency Transaction Reporting Act ("Reporting Act"), 31 U.S.C.A. § 5311, et seq. (West 1982), which requires financial institutions to report transactions in cash exceeding $10,000 individually, and totalling more than $100,000 in a twelve-month period. Defendants Patricia A. Murphy and Carol A. Orlandella are separately accused of failures to file required reports under 31 U.S.C.A. § 5322(a). (Counts Thirty-Eight through Forty-One). In addition, all but defendant Carole S. Cohen are charged in Count One with concealing material facts in violation of 18

U.S.C.A. § 1001. Finally, Counts Forty-Two and Forty-Three charge defendants Orlandella and Cohen with perjury before the grand jury. Defendants have moved to dismiss all counts.[1]

Rule 12 of the Federal Rules of Criminal Procedure permits the dismissal of a defective indictment prior to trial. Fed.R. Crim.P. 12(b)(2). Defendants in this case allege defects of two varieties. According to defendants, those counts charging violations of the Currency Reporting Act are defective because the facts alleged, even if true, would fail to make out an offense under the statute. That count charging a violation of 18 U.S.C.A. § 1001, on the other hand, is allegedly defective not because it fails to state an offense, but rather because it charges the offense in conclusory terms, parroting the language of the statute without spelling out the factual basis for the charge.

### The Reporting Act Counts

Defendants move to dismiss Counts Two through Forty-One, charging violations of the Reporting Act, on the grounds that: (1) the Act does not require the reporting of "structured" transactions;[2] and (2) the Act is "unconstitutionally vague and ambiguous" with respect to the kind of transaction involved in this case. Neither proposition is true.

■ Proposition one—that, as a matter of law, a bank may not be prosecuted for failing to report "structured" transactions—misreckons the First Circuit's holding in *United States v. Anzalone,* 766 F.2d 676 (1st Cir.1985). Defendants assert that *Anzalone's* holding that a customer has no independent duty to report "structured" transactions under the Currency Reporting Act entails the conclusion that "no reporting requirement devolves upon a bank." But the *Anzalone* court specifically resisted that all-too-simple logical hop. It took

---

1. The motions pertaining to the perjury counts have previously been denied.

2. The term "structured" transactions was applied by the government in the *Anzalone* case to refer to cash transactions of a reportable

amount that had been broken up—or "structured"—into amounts of less than $10,000 each to avoid reporting requirements. 766 F.2d at 679.

pains to confine its holding to the facts before it, leaving open the possibility that a bank's knowing failure to report structured transactions might indeed run afoul of currency reporting requirements.[3]

■ Proposition two—that the Currency Reporting Act is unconstitutionally vague with respect to "structured" transactions— fairly states an aspect of the *Anzalone* holding,[4] but misapplies it to this case. The problem is not simply that the indictment in this case charges as principal not a bank customer, but the bank itself; it is, more fundamentally, that the transactions alleged in the government's indictment are not "structured" within the meaning of *Anzalone*. Notwithstanding defendants' contentions to the contrary,[5] the manner in which the transactions in this case were conducted bears crucially on the question of whether the Currency Reporting Act is "unconstitutionally vague and ambiguous" with respect to them.

Defendants have at length catalogued the obscurities of the Currency Reporting Act. They have contrasted the Act with other statutes[6] that specifically prohibit aggregated transactions, pointed up the obscurity of the governing regulations, noted the Treasury Department's self-conscious failure to address the issue of structured transactions under the Act, and invoked the long history of statutory and common law to show that customer transactions carry a "strong presumption" of confidentiality—

all to demonstrate that the Currency Reporting Act plainly fails to "prescribe with the constitutionally-required clarity, if at all, that structured transactions must be reported on pain of criminal sanction." Although the analysis is correct, it misses the point that the transfers alleged in this case do not fall within the zone of obscurity defendants have marked out. On the contrary, if the government is able to prove at trial the facts as alleged in the indictment and bill of particulars, it will have succeeded in bringing defendants' conduct within the plain meaning of the Currency Reporting Act and its regulations.

The indictment in this case alleges that on thirty-six separate occasions defendant James McDonough, the customer, entered the bank, approached a teller, requested multiple counter checks, and then used those checks collectively to withdraw a lump sum in cash from a single account. Although no one of the checks ever exceeded $9,000, each of the thirty-six simultaneous, multiple check cashings aggregated in excess of $10,000. Title 31 C.F.R. § 103.22 (1985), promulgated under the Currency Reporting statute, provides that:

> Each financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer ... which involves a transaction in currency of more than $10,000.

31 C.F.R. § 103.22(a)(1) (1985). And, as defined by the regulation, a "transaction in

---

**3.** In *Anzalone,* the government had charged a bank customer with violations of the Currency Reporting Act because he allegedly "structured" cash transactions to avoid the $10,000 reporting requirement. No charges were brought against the banks involved. The Court of Appeals held that a customer has no independent duty to file currency transaction reports. 766 F.2d at 681. As for the bank, it held that "under the circumstances of this case, [it] did not commit any crime by failing to report transactions as it lacked knowledge of their structured nature." *Id.* at 683.

**4.** The Court of Appeals in *Anzalone* held that to apply criminal sanctions to a bank customer for structuring transactions would violate the fair warning requirements of the fifth amendment due process clause. As noted, the court re-

served judgment on whether banks knowingly failing to report structured transactions could be considered fairly warned under the Currency Reporting Act.

**5.** In its Memorandum defendant Bank of New England insists that: "Although the exact manner in which the transactions were structured in the present case differs from that in *Anzalone,* this distinction is immaterial and has no bearing on the result.... Under the majority opinion in *Anzalone,* the mechanics of how a transaction is 'structured' are irrelevant to the reporting requirement."

**6.** 26 U.S.C. § 6050I requiring business persons to report cash transactions of more than $10,-000 to the IRS, and 15 U.S.C. 1644 prohibiting the fraudulent use of credit cards.

currency" is any transaction "involving the physical transfer of currency from one person to another." *Id.* at § 103.11.

Defendants have argued strenuously that in "ordinary banking parlance" the terms "deposit," "withdrawal," and "transaction" refer to "individual items" memorialized by negotiable instruments, such as money orders, matured drafts—or counter checks. No amount of bankerly vocabulary, however, can conjure away the regulations' explicit equation of "transaction in," and "physical transfer of," currency. *See Albernaz v. United States,* 450 U.S. 333, 336, 101 S.Ct. 1137, 1140, 67 L.Ed.2d 275 (1981) (where regulation or statute is unambiguous on its face it must be applied as such, absent "clearly expressed legislative intent").

Because a showing that defendants failed to report a series of unitary transfers of currency to a single customer at a single moment would plainly make out a violation of the regulations under the Currency Reporting Act, those counts of the indictment alleging such an offense cannot be dismissed on either substantive or vagueness grounds—particularly under a rule that allows pretrial disposition of only those motions that can be decided "without the trial of the general issue...." Fed.R. Crim.P. 12(b).

*The Section 1001 Count*

■ Defendants' first argument against Count One of the indictment is foreclosed, because it relied on the proposition that the bank had no duty to report the transaction at issue in this case.[7] Because that assumption falls, the motion to dismiss hangs entirely on defendants' second argument— that Count One fails to allege a § 1001 offense with sufficient particularity.

In support of its insufficiency argument, the Bank cites *United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985) and *United States v.*

*London,* 550 F.2d 206, 212–14 (5th Cir. 1977) for the proposition that a § 1001 count must allege an affirmative act to conceal. However, the argument ignores the fact that the indictment expressly charges that defendants "did ... willfully and knowingly conceal and cover up ... by trick, scheme and device, one or more material facts." The problem with Count One— if there is one—is not that it fails to allege an affirmative act of concealment, but rather that it fails to describe the concealment scheme specifically enough.[8]

The standard governing the sufficiency of an indictment is well-settled. An indictment is sound if it: (1) contains the elements of the offense charged; (2) fairly informs the defendant of the charge against which he must defend; and (3) enables him to plead an acquittal or conviction in bar of future prosecution for the same offense. *United States v. Sedlak,* 720 F.2d 715, 719 (1st Cir.1983) (citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)).

Without doubt Count One meets the first criterion: it recites the elements of the offense charged. It is less obvious, but undoubtedly true, that it also meets part three—protecting defendants against double jeopardy. The § 1001 charge names the persons alleged to be involved in the conspiracy, and it identifies the date, time, and location of each transaction alleged to be part of the scheme to conceal. Furthermore, though the indictment fails to specify the exact nature of the "trick, scheme or device" allegedly employed by defendants, that factual description is supplied by the government's bill of particulars. It is well known that a bill of particulars cannot cure an invalid indictment, *United States v. Murphy,* 762 F.2d 1151, 1154 (1st Cir.1985) (citing *Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240

---

**7.** Following *Anzalone,* defendants had argued, correctly, that if there were no primary duty to report cash transfers of the kind involved in this case, they could not be charged under 18 U.S. C.A. § 1001 with engaging in a "trick, scheme,

or device" to conceal facts that would only be material with respect to such a duty. 766 F.2d at 682–83.

**8.** Defendant Murphy has made this argument.

**40**

(1962)). It can, however, aid our judgment of the double-jeopardy question with respect to an otherwise sound one, since a defendant may rely on the entire record as a bar to future prosecutions. *Russell v. United States,* 369 U.S. at 764, 82 S.Ct. at 1047. *See also United States ex rel. Ballard v. Bengston,* 702 F.2d 656, 660 (7th Cir.1983) ("An indictment need not plead offenses in such detail as to be self-sufficient as a bar against further prosecution for the same offense; ...").

It is a closer question whether Count One as alleged meets the second part of the sufficiency test—informing defendants of the charge they must be prepared to meet. To satisfy this test, an indictment must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R. Crim.P. 7(c). The question, then, is whether a count that specifies the dates, times, and locations of the events constituting the alleged scheme to conceal, while relying on statutory language unsupported by additional facts to charge the existence of the scheme, has stated the "essential facts."

I think it has. The Supreme Court has held that an indictment may set forth the offense "in the words of the statute itself," so long as those words state without ambiguity the elements of the offense. *Hamling,* 418 U.S. at 117, 94 S.Ct. at 2907. *See also United States v. Wells,* 766 F.2d 12, 22 (1st Cir.1985); *United States v. Pringle,* 751 F.2d 419, 428 (1st Cir.1984) (reiterating *Hamling* dictum that an indictment may track statutory language). Although the government might better have spelled out the precise nature of the Count One concealment scheme rather than merely parroting statutory language, under *Hamling* its failure to do so is not fatal. *See also United States v. Debrow,* 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953) (sufficiency is not a question of whether an indictment "could have been more definite and certain.")

This is not a case, such as *United States v. Murphy,* where the indictment fails to specify the events to which the charge refers.[9] Rather, it is a case like *United States v. London*—also involving a challenge to a section 1001 count—in which the "crucial transactions relied upon to demonstrate the offense were specified," even though the indictment failed to provide "factual elaboration upon the statutory terms, 'conceals ... by any trick, scheme, or device.'" 550 F.2d at 211. *See also Bengston, supra* (an indictment charging theft by deception upheld despite absence of any details as to nature of deceptive scheme); *United States v. Williams,* 679 F.2d 504 (5th Cir.1982) (a Hobbs Act indictment alleging interstate commerce effects in conclusory terms with no factual details judged sufficient). Viewed in light of the indictment as a whole, *Wells,* 766 F.2d at 22, Count One fairly apprises defendants of the charge they must meet.

For the reasons stated, the defendants' various motions to dismiss are denied.

9. In *Murphy,* an indictment was defective which charged defendants with threatening a witness, without identifying in which of several proceedings this had occurred. 762 F.2d at 154–55.