**UNITED STATES of America,**

v.

**Joseph P. TOTA and George B. Fahmy, Defendants.**

**No. SS 87 Cr. 273.**

United States District Court, S.D. New York.

Sept. 29, 1987.

United States Atty. Rudolph Giuliani and Assistant U.S. Atty., David Spears, for the U.S.

Frank Wright, Allison Manning, Grand & Ostrow, New York City, for defendant Joseph P. Tota.

Thomas Fitzpatrick, Anthony Paccione, Herzog, Calamari & Gleason, New York City, for defendant George B. Fahmy.

## MEMORANDUM AND ORDER

CANNELLA, District Judge.

Defendants' motion to dismiss the indictment is denied. Fed.R.Crim.P. 12(b).

## BACKGROUND

On April 2, 1987, Joseph P. Tota and George B. Fahmy, former employees of the brokerage firm of Paine, Webber, Jackson & Curtis ["Paine, Webber"], were named in a two-count indictment alleging conspiracy to defraud the United States and obstruction of justice. These charges stemmed from defendants' activities as branch manager and operations manager, respectively, of a Paine, Webber branch office in mid-

town Manhattan. Superseding indictments were returned on May 12 and July 7.

Tota began working as branch manager in June 1982. Fahmy began working as operations manager at the same branch office in March 1984. Gary Eder was a broker in the branch office and is named in the indictment as a conspirator, along with Tota and Fahmy. On March 19, 1987, Eder pled guilty before Judge Edmund L. Palmieri to one count of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and to one count of willfully causing Paine, Webber to fail to make and maintain certain financial records, in violation of 15 U.S.C. § 78q(a). *United States v. Eder*, 87 Cr. 196 (ELP).

The indictment describes a scheme whereby Eder received lump-sum cash payments from Paine, Webber customers, in amounts up to $72,000, for deposit into their accounts. Eder then broke down the payments into sums of less than $10,000 for (1) deposit into a customer's account on different days; (2) deposit on the same day into different accounts controlled by the same customer; and (3) purchase of bank checks in an amount less than $10,000 for deposit, along with cash, into a customer's account. As discussed more fully below, the indictment alleges that Eder, Tota and Fahmy conspired to "structure" these transactions in order to circumvent federal statutes and regulations requiring financial institutions to file reports of currency transactions, involving more than $10,000. Tota and Fahmy are also charged with conspiring with Eder to aid and abet violations of the reporting statutes by Paine, Webber.

## DISCUSSION

### A. *The Indictment and Defendants' Motion To Dismiss*

Count one of the indictment alleges a conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. The conspir-

acy allegedly had five objects: (1) to defraud the United States by impeding, impairing, obstructing and defeating the Government's efforts to collect data on currency transactions, Indictment ¶ 5; (2) to cause Paine, Webber to fail to file reports of currency and other payments and transfers through and to such financial institution, involving a transaction in currency of more than $10,000, as part of a pattern of transactions involving more than $100,000 in a 12-month period, in violation of 31 U.S.C. § 5313(a) and regulations promulgated thereunder, 31 C.F.R. § 103.22, *id.* ¶ 6; (3) to cause Paine, Webber to fail to file reports of deposits of currency and other payments and transfers through and to such financial institution, involving a transaction in currency of more than $10,-000, also in violation of 31 U.S.C. § 5313(a) and 31 C.F.R. § 103.22, *id.* ¶ 7; (4) to cause Paine, Webber to fail to make and keep certain records of financial transactions, in violation of 15 U.S.C. § 78q(a) and 17 C.F.R. §§ 240.17a-3, 240.17a-4 and 240.17a-8, *id.* ¶ 8; and (5) to obstruct justice by destroying certain records during a grand jury investigation, in violation of 18 U.S.C. § 1503, *id.* ¶ 9. Count two of the indictment charges obstruction of justice, in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2.[1]

Tota moves to dismiss the entire indictment, claiming that (1) the conspiracy count does not charge a crime under 31 U.S.C. § 5313, or in the alternative, that § 5313 is unconstitutional as applied to defendants; (2) the securities record-keeping object of the conspiracy count must be dismissed because Paine, Webber was not required to keep the information allegedly falsified; and (3) the obstruction of justice object of the conspiracy count and the substantive obstruction of justice charge in count two are legally insufficient. Fahmy joins in the motion, except with respect to the obstruction of justice allegations in both counts.

---

1. 18 U.S.C. § 2 provides:

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

### B. *The Currency Transaction Reporting Requirements*

The Currency and Foreign Transactions Reporting Act, 31 U.S.C. §§ 5311–5322 ["the Act"], requires domestic financial institutions to make and maintain "certain reports or records [which] have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." *Id.* § 5311. Section 5313(a) of the Act provides:

> When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount, denomination, or ... under any circumstances the Secretary prescribes by regulation, the institution and any other participant in the transactions the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes.

31 U.S.C. § 5313(a). Criminal penalties for willful violations of the statute and regulations promulgated thereunder are set forth in 31 U.S.C. § 5322.

Pursuant to the above grant of authority, the Treasury Department issued the following regulation:

> Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution, which involves a transaction in currency of more than $10,000.

31 C.F.R. § 103.22(a) (1984).

■ Treasury regulations define a "transaction in currency" to be a "transaction involving the physical transfer of currency from one person to another." *Id.* § 103.11. The report called for in the regulations is known as a "Form 4789, Currency Transaction Report" ["CTR"]. It is well established that only financial institutions are required to file CTRs for transactions involving more than $10,000. *See California Bankers Ass'n v. Shultz*, 416 U.S. 21, 58, 94 S.Ct. 1494, 1516, 39 L.Ed.2d 812 (1974).

### C. *Defendants' Challenge to the Reporting Requirements*

Defendants challenge the legal sufficiency of the CTR-related objects of the conspiracy count on two grounds. First, they argue that they may not be charged with conspiring to cause Paine, Webber to fail to file CTRs because Paine, Webber was under no duty to file CTRs for the type of "structured" transactions alleged in the indictment. Second, defendants argue that even if Paine, Webber was required to file CTRs for the transactions, the reporting statutes are unconstitutional as applied because they did not give fair notice that structuring transactions in the manner alleged was unlawful.

### 1. *Structured Transactions Under the Act*

Defendants first argue that the CTR-related objects in the indictment's conspiracy count are legally insufficient because 31 U.S.C. § 5313 does not specifically prohibit the type of "structured" transactions alleged to have taken place. Defendants contend that Paine, Webber was never under any legal obligations to file CTRs because no "deposit" to a Paine, Webber customer's account ever exceeded $10,000 in a single day. *See* Memorandum of Law In Support of Defendant's Motion to Dismiss the Indictment at 11–16, 87 Cr. 273 (JMC) (S.D.N.Y. June 19, 1987) ["Defendant's Memorandum"]. The thrust of their argument is that structuring transactions, so that the total deposit to a customer's account in a single day is less than $10,000, is not prohibited by the Act.

In support of this argument, defendants rely upon a series of decisions in the First, Eighth and Nine Circuits in which convictions of bank customers for violating 31 U.S.C. § 5313, were reversed. *See, e.g., United States v. Larson*, 796 F.2d 244, 246 (8th Cir.1986); *United States v. Dela Espriella*, 781 F.2d 1432, 1435 (9th Cir.1986); *United States v. Varbel*, 780 F.2d 758, 760–63 (9th Cir.1986); *United States v. Anzalone*, 766 F.2d 676, 680–83 (1st Cir.1985); *see also United States v. Gimbel*, 830 F.2d 621, 625–26 (7th Cir.1987). Defendants ac-

knowledge, however, that several other circuits have upheld the application of § 5313 to individuals, if they willfully structured their transactions so as to cause the financial institution to fail to file the appropriate CTR. *See, e.g., United States v. Giancola,* 783 F.2d 1549, 1551–52 (11th Cir.), *rehg. denied,* 797 F.2d 982 *(en banc),* cert. denied, —— U.S. ——, 107 S.Ct. 669, 93 L.Ed. 2d 721 (1986); *United States v. Cook,* 745 F.2d 1311, 1315 (10th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985) *United States v. Puerto,* 730 F.2d 627, 632–33 (11th Cir.1984), *cert. denied,* 469 U.S. 847, 105 S.Ct. 162, 83 L.Ed.2d 98 (1984); *United States v. Tobon–Builes,* 706 F.2d 1092, 1098–99 (11th Cir. 1983) (customer); *United States v. Thompson,* 603 F.2d 1200, 1203–04 (5th Cir.1979); *United States v. Shearson, Lehman Bros., Inc.,* 650 F.Supp. 490, 493–98 (E.D.Pa.1986) (customers of banks and employees of brokerage firm); *United States v. Richter,* 610 F.Supp. 480, 487–90 (D.C.Ill.1985), *aff'd sub nom. United States v. Konstantinov,* 793 F.2d 1296 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 191, 93 L.Ed.2d 124 (1986) (customers); *United States v. Konefal,* 566 F.Supp. 698, 701–02 (N.D.N.Y. 1983) (customers).

 In the Second Circuit, an individual, although under no legal duty himself to file a CTR, nevertheless can be held criminally liable for willfully causing a financial institution to fail to file a currency report which it has a legal duty to file. *See United States v. Heyman,* 794 F.2d 788 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986); *see also United States v. Nersesian,* 824 F.2d 1294, 1311 (2d Cir.1987).

*Heyman* involved a Merrill Lynch employee who received lump-sums of cash from his customers in amounts exceeding $10,000. He then structured the transactions by opening several different accounts and making deposits of less than $10,000 into each of them. In upholding Heyman's conviction under 31 U.S.C. § 5313 and 18 U.S.C. § 2(b), for willfully causing Merrill Lynch to fail to file the appropriate CTRs, the court stated that "[h]ad Merrill Lynch,

a financial institution, structured the transactions as Heyman did, it would have violated federal law." 794 F.2d at 791.

This Court finds *Heyman,* rather than the cases cited by defendants, dispositive. First, the *Anzalone* line of cases are inapposite to the facts in this case. Essentially, these cases hold that because bank customers are under no obligation to disclose the nature of their own structured transactions, they may not be prosecuted for causing a financial institution to fail to file the appropriate CTRs. *See, e.g., Anzalone,* 766 F.2d at 682; *Larson,* 796 F.2d at 246. The Second Circuit in *Heyman,* however, has specifically rejected this approach, stating that through the application of 18 U.S.C. § 2, "any individual, including a customer, may be held criminally liable for willfully causing a financial institution to fail to file [required] CTRs." 794 F.2d at 792; *see Nersesian,* at 1312 ("Under 18 U.S.C. § 2(b), a bank customer has a duty not to willfully cause a bank to violate [31 U.S.C. § 5313.").

Furthermore the facts in *Heyman* are closely analogous to those in the instant case. Heyman was not a customer, but an employee of Merrill Lynch when he received cash sums from Merrill Lynch customers in amounts exceeding $10,000. He then structured each transaction by breaking up the payment and making separate deposits during the Course of a single day, or by opening new accounts and later transferring the funds into a pre-existing account. In the instant case, the indictment alleges that Eder received lump-sum cash amounts from Paine, Webber customers in amounts ranging from $25,100 to $72,000. *See* Indictment ¶¶ 10(a), 11(1), 11(4), 11(7). Eder then broke down the lump-sum amount into smaller amounts of less than $10,000 and either made deposits into the same account over the course of several days, or made deposits on a single day into different accounts controlled by the same person. Contrary to defendants' assertions, *see* Defendants' Memorandum at 24, the latter type of structured transaction would appear to fall within the scope of § 5313. *Heyman* specifically stated that a financial institution "would [be] re-

quired to file a CTR for cumulative deposits in a single day." 794 F.2d at 792. Thus, if a customer gives an employee of a financial institution a lump-sum of cash exceeding $10,000 in a single day, for deposit into several pre-existing accounts all under the customer's control, *Heyman* would appear to indicate that the CTR filing requirement is triggered. *See id.* Once again, the focus is on the initial exchange of funds between a customer and the financial institution's representative.

■ Defendants stress the fact that the structured transactions in *Heyman* resulted in total, single day deposits which exceeded $10,000. While it is true that several of the transactions in *Heyman* were structured, and the smaller amounts deposited, in a single day, it is far from clear that the structured transactions alleged in the indictment are outside the scope of § 5313. As stated above, in the Court's view, *Heyman* focused on the initial exchange of funds between the Merrill Lynch customer and Heyman involving more than $10,000.[2] Because the funds were destined to be deposited in the customer's Merrill Lynch account, the CTR filing requirement was triggered. But for Heyman's structuring of the transaction for the purpose of evading the filing requirement, Merrill Lynch would have filed the appropriate CTR. Accordingly, Heyman caused Merrill Lynch to fail to file the CTRs and was, therefore, subject to the criminal penalties found in 31 U.S.C. § 5322.

The indictment here alleges that, on at least three occasions, Eder received lump-sums of cash from a Paine, Webber customer in excess of $10,000. These sums were then broken down and deposited into the same account, or into different accounts controlled by the same customer. Tota used part of the cash sums to purchase bank checks which were deposited, along with the remaining cash, into the customer's account. Using *Heyman* as a guide, the Court sees little difficulty in classifying the "physical transfer of currency," 31 C.F.R. § 103.11 (defining "transaction in currency"), from a Paine, Webber customer to Eder, on a single occasion and in an amount exceeding $10,000, as a "deposit, ... of currency or other payment or transfer, by, through, or to [Paine, Webber], which involve[d] a transaction in currency of more than $10,000." 31 C.F.R. § 103.22(a).

■ Defendants also argue that a financial institution's duty to file a CTR only arises when an actual "deposit" or credit is posted to a customer's account. *See* Defendant's Memorandum at 25–30. This argument is without merit. 31 C.F.R. § 103.22(a) requires a financial institution to file a CTR whenever "a deposit, withdrawal, exchange of currency or *other payment or transfer, by, through, or to* such financial institution, which involves a transaction in currency or more than $10,000" is made (emphasis added). Defendants ignore the underscored language and focus exclusively on the term "deposit." Although in a strict banking sense, a "deposit" to a customer's account may not be technically complete until that account is actually credited, when a customer of a financial institution delivers to an officer of that institution a sum in excess of $10,000 for deposit into an account under his control, a "payment or transfer, by, through, or to such financial institution" has occurred. *See United States v. Bank of New England, N.A.*, 640 F.Supp. 36, 39 (D.Mass. 1986) ("No amount of bankerly vocabulary, however, can conjure away the regulations' explicit equation of 'transaction in,' and 'physical transfer of,' currency."). Any

---

**2.** Defendants' argument that only single day structured transactions can form the basis for prosecution under § 5313 is further undermined by one of the transactions which formed the basis for Heyman's prosecution. On one day, Heyman received $19,000 from Henry and Carolyn Cohen. He then deposited $9,500 into a pre-existing joint account and created a new account in the name of Henry Cohen, into which he deposited the remaining $9,500. No CTR was filed by Merrill Lynch. On the following day, Heyman transferred the $9,500 from Henry Cohen's account into the joint account, the "net effect being a deposit of $19,000 into the joint Cohen account." 794 F.2d at 790 n. 3. Obviously, the court in *Heyman* considered this to be a single transaction representing the transfer of $19,000 from the Cohens into their joint account, despite the structuring by Heyman that obviated the filing by Merrill Lynch of a CTR.

other interpretation would enable an employee of a financial institution to flout the CTR filing requirements with impunity by acting as a "structuring" intermediary between a customer seeking to avoid detection of large cash deposits and the financial institution itself, the latter of which is under the legal duty to report such deposits.

2. *Constitutionality*

■ Defendants' second argument regarding the CTR objects in the conspiracy count is that, even assuming that Paine, Webber was under a duty to file CTRs for the transactions alleged in the indictment, the statutes and regulations are unconstitutional because they fail to give adequate notice of the criminality of structuring the transactions in the manner alleged. This same argument was raised and rejected in *Heyman*, which stated that "the requirement ... that a defendant's acts be 'willfull' provides adequate protection for individuals who might unwillingly stumble into a violation of federal law." 794 F.2d at 792 (citing *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Boyce Motor Lines v. United States*, 342 U.S. 337, 342, 72 S.Ct. 329, 331–32, 96 L.Ed. 367 (1952)); *see United States v. $359,000 in United States Currency*, 828 F.2d 930, 933 (2d Cir.1987); *United States v. Granda*, 565 F.2d 922, 926 (5th Cir.1978) (The term *"willful* [in § 5313] require[s] proof of the defendant's knowledge and specific intent to commit the crime."); *United States v. Shearson, Lehman Bros., Inc.*, 650 F.Supp. at 499; *United States v. Richter*, 610 F.Supp. at 490.[3]

Moreover, "to be held under the broad sweep of the fraud prong of § 371, [a defendant] need not have agreed to commit, or have actually committed, a specific substantive offense. They merely must have agreed to interfere with or to obstruct one of the government's lawful functions." *Nersesian,* at 1313 (citing *United States v. Southland Corp.*, 760 F.2d 1366, 1382 (2d Cir.1985), *cert. denied*, 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1986)).

D. *Record Keeping Provisions of the Securities Laws.*

■ Defendants are also charged with conspiring to violate § 17(a) of the Securities Exchange Act, 15 U.S.C. § 78q(a), by causing Paine, Webber to (1) create false records, which reflected deposits of cash as deposits of checks; (2) cause Paine, Webber to fail to file CTRs as required; and (3) cause Paine, Webber to fail to preserve certain records of financial transactions required to be maintained for a period of time by members of a national securities exchange. Defendants contend that, although the "essence" of this charge is that certain cash deposits were deliberately miscoded as check deposits, such conduct is not prohibited by § 17(a) of the Exchange Act. Defendants further contend that if such conduct does violate § 17(a), then the statute and regulations promulgated thereunder are unconstitutional as applied to them.

Section 17(a) of the Exchange Act mandates that institutions like Paine, Webber "shall make and keep for a prescribed period such records ... as the Commission, by rule, prescribes as necessary or appropriate." 15 U.S.C. § 78q(a). Section 32 of the Exchange Act provides criminal penalties for "[a]ny person who willfully violates any provision of this title ..., or any rule thereunder." 15 U.S.C. § 78ff.

Pursuant to this authority, the SEC promulgated regulations, which read in relevant part:

> federal law even if the substantive offense which was the object of the conspiracy was not committed. *See Pinkerton v. United States*, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946) ("It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses.").

---

**3.** Defendants also argue that the charge of conspiring to defraud the United States by causing Paine, Webber to violate the CTR laws can only be maintained if Paine, Webber was under a duty to file CTRs which went unfulfilled. In light of the Court's ruling above, this argument is without significance. Of course, it is a fundamental maxim of conspiracy law that an individual may be charged in a conspiracy to violate

(a) Every member of a national securities exchange who transacts a business in securities directly with others than members of a national securities exchange ... shall make and keep current the following books and records relating to his business:

(1) Blotters (or other records of original entry) containing an itemized daily record of ... all receipts and disbursements of cash and all other debits and credits.

17 C.F.R. § 240.17a–3(a)(1). In addition, 17 C.F.R. § 240.17a–8 requires that financial institutions subject to the Currency and Foreign transactions Reporting Act "shall comply with the reporting, record-keeping and record retention requirements of Part 103 of Title 31 of the Code of Federal Regulations." Records required under § 240.17a–3 are required to be kept for "not less than 6 years," *id.* § 240.17a–4(a), and records required under § 240.17a–8 must be kept for "not less than 3 years." *Id.* § 240.17a–4(b)(1).

Defendants attempt to blur the meaning of the above provisions by arguing that the term "cash" in 17 C.F.R. § 240.17a includes within its meaning both currency and check deposits. *See* Defendants' Memorandum at 38–40. Under this interpretation, the regulations do not require firms like Paine, Webber to create separate records for cash, as opposed to check, deposits. Thus, defendants argue, because Paine, Webber was not required to maintain separate listings for cash and check items, any alleged "miscoding" of cash deposits as check deposits was irrelevant and could not constitute a violation of the regulations. *Id.* at 39.

The Court agrees with the Government that this issue appears to be controlled by *Sinclair v. Securities and Exchange Commission,* 444 F.2d. 399 (2d Cir.1971). In that case, the Second Circuit affirmed an SEC decision barring a clerk from the securities industry for violating § 17(a) of the Exchange Act. The court held that, "even assuming no legal obligation to furnish the names [of particular brokers who executed trades on required forms], there was an

obligation, upon voluntarily supplying that information, to be truthful." *Id.* at 401. Thus, defendants' argument that Paine, Webber could misrepresent information about the nature and type of customer deposits without violating § 17(a) is unpersuasive. Furthermore, it is of no import that *Sinclair* was a civil case. At trial, the Government will be required to prove not merely that § 17(a) was violated by Paine, Webber, but also that the defendants "willfully" caused the firm to violate the statute and regulations thereunder. *See Heyman,* 794 F.2d at 792.

### E. *Obstruction of Justice Charges*

Defendant Tota's last argument relates to the obstruction of justice object in the conspiracy count and the substantive obstruction of justice charge underlying count two of the indictment. Defendant Fahmy does not join Tota's motion to dismiss in this regard. Section 1503 of Title 18 provides for criminal penalties against anyone who attempts to impede or interfere with the work of a grand jury, or who "endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503. Tota is also charged as an aider and abettor under 18 U.S.C. § 2(b).

The indictment provides sufficient detail of the efforts allegedly made by Fahmy and Tota to cover the trail of the various transactions forming the basis for the indictment. These efforts included the destruction of cash summary folders, the miscoding of customer cash deposits as check deposits and the instructing of Paine, Webber cashiers to hold back cash from a customer's account. Indictment ¶¶ 10(c), (e), (f), (g), 11(10)–11(17).

To survive a motion to dismiss, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Tramunti,* 513 F.2d 1087, 1113 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *see United States v. Bagaric,* 706 F.2d 42, 61 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983) ("An indictment need only track the language of the statute.").

724

Generally, an indictment will be upheld if it "(1) contains the elements of the offense charged; (2) fairly informs the defendant of the charge against which he must defend; and (3) enables him to plead an acquittal or conviction in bar of future prosecution for the same offense." *United States v. Bank of New England, N.A.,* 640 F.Supp. at 39; *see Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Sedlak,* 720 F.2d 715, 719 (1st Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 709 (1984).

In the Court's view, the obstruction of justice object in count one and the substantive obstruction of justice charge in count two satisfy the above requirements. The means and overt act sections of the conspiracy count provide ample description of the particular allegations underlying the charges of obstruction of justice. In addition, count two adequately tracks the language of 18 U.S.C. § 1503. Accordingly, Tota's motion to dismiss the obstruction of justice allegations in the indictment is denied.

## CONCLUSION

Defendants' motion to dismiss the indictment is denied. Fed.R.Crim.P. 12(b).

SO ORDERED.