**SECURITIES AND EXCHANGE COMMISSION, Appellee,**

v.

**Robert L. RIDENOUR, Appellant.**

No. 89–2534.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1990.

Decided Sept. 5, 1990.

William Sidney Smith, Des Moines, Iowa, for appellant.

Eric Summergrad, Washington, D.C., for appellee.

Before MAGILL and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Defendant Robert Ridenour appeals from the district court's[1] judgment finding Ridenour had violated federal securities laws and ordering that Ridenour disgorge $470,287.23 in profits earned through interposing Ridenour's undisclosed personal account in bond transactions with his customers and his employer, Dean Witter. Ridenour contends the court misunderstood the bond market in concluding that he owed a fiduciary duty to customers with whom he traded, that his failure to disclose his identity and his trading activity did not constitute unlawful interpositioning, and that he did not violate broker-dealer registration requirements. Ridenour further contends the court erred in determining the amount of profits he must disgorge, by failing, *inter alia*, to give collateral estoppel effect to findings in a criminal case in which Ridenour was acquitted of charges that he willfully filed false federal income tax returns.

We affirm the district court's rulings regarding Ridenour's civil liability under federal securities laws, and, with the exception of $2,241.27 in profits which the government now concedes were obtained through trades which did not involve any fraud on Ridenour's part, we affirm the court's judgment requiring Ridenour to disgorge the profits he obtained through use of his nominee accounts.

## I.

Robert Ridenour was a very sophisticated, very successful bond dealer, who was employed by Dean Witter from September, 1979, through April, 1984. Ridenour worked in the institutional bond department, and his clients were primarily Iowa banks. Ridenour's job as an account executive was to contact these banks, and various individuals as well, to buy and sell government and municipal securities on behalf of Dean Witter. The Toy National Bank, United Central Bank, and First Community Bank and Trust were among Ridenour's clients.

In 1985, the Securities and Exchange Commission brought a civil complaint against Ridenour, alleging he had violated section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and sections 10(b) and 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78o(a), as well as Rule 10b–5, 17 C.F.R. § 240.10b–5. The basis of the SEC's complaint was a series of trades Ridenour effected on his own behalf between 1979 and 1981 through use of nominee accounts at the Toy National Bank and at First Community Bank and Trust. During this two year period, Ridenour participated in over 100 "matched transactions" in which he would buy a security from a client through these nominee accounts, without informing the client that he was the buyer, and then resell the same security within a short period of time at a profit, usually on the same day.

Expert testimony at trial revealed that Ridenour's profit rate was an "extraordinary" 94% on these trades. Ridenour never disclosed this profit to his clients or to Dean Witter. Many of the trades involved Richard Hickman, a vice president at United Central Bank. Hickman testified that, since 1976, Ridenour had spent a lot of time with him, teaching him "a lot about municipal securities, government securities, doing sales, teaching me about the municipal

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Donald E. O'Brien, United States District Judge for the Southern District of Iowa.

market, how the government markets worked." Tr. at 841. As a result of these contacts, according to Hickman, "everyone in the [investment] department felt as close or closer to Bob Ridenour than anybody else. He had educated, had been helpful to everyone in the department, and we all felt very close to him." Tr. at 854.

As a regional dealer firm, United Central Bank's investment department was often asked to buy and sell securities. In a typical bond transaction, Hickman would call Ridenour on behalf of a customer looking to sell; Hickman would tell Ridenour of three bids he had obtained for the bonds and would ask Ridenour if he could do better. Ridenour would utilize his expertise and resources to bid only on those transactions that were "winners:" where he was able immediately to arrange a sale of the bonds at a higher price. He would pocket the profit, without disclosing the higher resale price to Hickman.

Ridenour utilized the same type of transaction with other clients, who similarly relied on his market expertise. On some occasions, Ridenour even bargained with clients on "both ends of the transaction," agreeing to purchase bonds from one client through one of his nominee accounts, and then immediately selling the same bonds to another client, again secretly pocketing the profits. Ridenour basically contends on appeal that this practice is acceptable. He argues the district court erred in concluding that his conduct violated federal securities laws, because, according to Ridenour, his conduct was "fair" in the bond business. Ridenour argues he was not acting as a fiduciary on behalf of his customers. He claims his failure to disclose his participation in the transactions was not a material omission because customers do not care to whom they sell bonds or from whom they are purchasing them: what matters is the price. Ridenour says he never told his customers he would get them the "best price," so he was under no obligation to act on their behalf to do so.

■ The SEC acknowledges in its brief on appeal that in the usual bond transaction, a broker-dealer such as Ridenour does

*not* owe a duty to those who are trading in bonds, because the dealer makes no representations about the price the dealer quotes, other than it is what the dealer is willing to pay. The SEC argues, however, that the issue in this case is not what the usual practice is but what Ridenour's relationship with his customers was. The district court agreed, finding that Ridenour was sophisticated and his clients were gullible: they relied on him to quote them the best available market price for the purchase and sale of securities because of the unique relationship of trust and confidence that Ridenour had developed with them over the years. As a result, the court concluded Ridenour had misused his relationship with his clients and had defrauded them in violation of federal securities laws. *See* 15 U.S.C. §§ 77q(a) & 78j(b); 17 C.F.R. § 240.10b–5. *See generally Sinclair v. SEC*, 444 F.2d 399, 400–01 (2d Cir.1971); *Archer v. SEC*, 133 F.2d 795, 799–800 (8th Cir.), *cert. denied*, 319 U.S. 767, 63 S.Ct. 1330, 87 L.Ed. 1717 (1943). We have reviewed the record and find no reversible error in the court's findings or conclusions.

■ Ridenour's arguments that he need not register as a broker-dealer pursuant to 15 U.S.C. § 78o (a)(1) are equally unavailing. It is undisputed that, during the period from 1979 to 1981, Ridenour engaged in a series of transactions involving municipal and corporate securities. We agree with the government that Ridenour's level of activity during this period made him more than an active investor. Ridenour attempted to obtain and keep a regular clientele for his "private" bond deals, which he negotiated out of his office at Dean Witter, albeit on his own behalf. We find no error in the court's conclusion that Ridenour was a broker-dealer, and that his failure to register as such violated section 15(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78o (a)(1).

## II.

An individual found liable for fraudulently trading federal securities may properly be ordered to disgorge any ill-gotten profits. *See SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir.1987), *cert. denied*, 486 U.S. 1015,

108 S.Ct. 1751, 100 L.Ed.2d 213 (1989). Ridenour contends that the district court erred in determining the amount of profits he made on bond transactions involving his customers or those with whom he had a fiduciary relationship, because, according to Ridenour, he shared those profits with others, including Hickman of United Central Bank. Hickman testified he did not receive any of the profits from the transactions at issue in this case, and the district court credited this testimony.

■ Ridenour argues that a judgment of acquittal in a prior criminal case brought by the Justice Department against him pre-·cludes the court from finding that Hickman did not share in any profits in the "matched transactions" cited by the SEC. We cannot agree. The doctrine of collateral estoppel applies only when the issue sought to be precluded is the same as that involved in the prior litigation, the issue was actually litigated and the party sought to be estopped was given a full and fair opportunity to be heard on the issue, and determination of the issue was essential to a valid and final judgment. *See Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir.1989); *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983).

In the prior criminal case, Ridenour was charged with willfully filing false federal income tax returns for the years 1980, 1981, and 1982. We have reviewed Chief Judge Vietor's factual findings from the criminal trial and agree with the government that these findings do *not* constitute a determination that Ridenour shared the profits from the transactions at issue in this case with Hickman. Not only did the criminal case involve significantly more transactions than at issue here, but the primary issue was whether Ridenour had "willfully" failed to report his income from these transactions.[2] Moreover, even if the court had decided the precise issue of Hickman's involvement in the transactions at issue here, collateral estoppel does not apply when the prior action involves a different, and more rigorous, standard of proof. *See United States v. One Assortment of*

*89 Firearms*, 465 U.S. 354, 362, 104 S.Ct. 1099, 1104–05, 79 L.Ed.2d 361 (1984).

Nonetheless, the government has conceded on appeal that the district court erred in including the profits from eight specific transactions in its disgorgement order because, for those transactions (nos. 15, 25, 26, 77, 81, 85, 102, and 114 on plaintiff's exhibit 130), the government presented insufficient evidence of fraud on Ridenour's part. The district court's disgorgement order accordingly should be reduced by $2,241.27.

### III.

For all of the foregoing reasons, the judgment of the district court is affirmed, with the exception of the amount of profits Ridenour must disgorge. In lieu of the government's concession of a failure of proof on eight specific transactions, the court's judgment should be modified to reduce the amount of profits by $2,241.27, reflecting a total of $468,045.96 in profits which Ridenour must disgorge in accordance with the court's order.

---

**2.** Chief Judge Vietor concluded the government had failed to prove beyond a reasonable doubt that Ridenour had not acted in good faith in reporting his profits as ordinary income rather than on Schedule D, based on advice he received from a lawyer and a CPA.