**Charles A. ROTH, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 92–1557.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 10, 1994.

Decided March 16, 1994.

Rehearing Denied June 2, 1994.

Gene R. Thornton, Denver, CO, argued the cause and filed the briefs for petitioner.

Lucinda O. McConathy, Asst. Gen. Counsel, Securities and Exchange Com'n, Washington, DC, argued the cause for respondent. With her on the brief were Paul Gonson, Sol., Jacob H. Stillman, Associate Gen. Counsel, and Susan K. Straus, Atty., Securities and Exchange Com'n.

Before SILBERMAN, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Petitioner Charles Roth seeks review of an order of the Securities and Exchange Commission ("SEC" or "Commission"), partially affirming final disciplinary action by the National Association of Securities Dealers ("NASD"). For the reasons set forth below, we deny the petition for review in all respects.

In 1988 the NASD began disciplinary proceedings against Roth, who was a registered representative with R.B. Marich, Inc., a member firm of the NASD. The NASD charged Roth with violating Art. III, §§ 1 & 40 of the NASD Rules of Fair Practice, which prohibit any person associated with a NASD member firm from effecting a private securities transaction unless the member firm is given prior written notice. Roth was also charged with violating Art. III, § 1 of the NASD Rules of Fair Practice, by failing to register himself as a broker-dealer pursuant to § 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. 78o(a)(1) (1988). The violations were alleged to have arisen out of Roth's participation in various insurance company securities sales on seven separate occasions between 1985 and 1986.

The NASD Board of Governors found that Roth had violated the rules pertaining to private securities transactions and broker-dealer registration. Roth was fined $510,-038.13, suspended from associating with a member firm for six months, and ordered to requalify by examination as a registered representative. Roth appealed the decision of the NASD to the SEC, pursuant to 15 U.S.C. §§ 78s(d)(2) & (e)(1) (1988). The SEC vacated the NASD's sanction for one of the trans-

actions and reduced Roth's total fine to $105,000, but otherwise upheld the findings and conclusions of the NASD.

Before this court, Roth argues that the NASD's penalty provisions and "private securities transactions" rules are unconstitutionally vague; that the SEC's interpretation of the private securities transactions rules and of § 15(a) of the Securities Exchange Act are erroneous; that substantial evidence does not support the SEC's factual conclusions that Roth effected private securities transactions and acted as a broker-dealer; and that his sentence is excessive. We find these challenges to be meritless, and affirm the SEC's order in all respects. Roth's arguments do not warrant separate discussion, with one exception: namely, that he was not required to register as a broker-dealer under § 15(a) since he was at all times a registered representative with R.B. Marich, Inc., a registered broker-dealer.

\* \* \* \* \* \*

Section 15(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78o(a)(1) (1988), provides in relevant part that

> It shall be unlawful for any broker or dealer which is … a natural person not associated with a broker or dealer … to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security … unless such broker or dealer is registered [with the Commission].

Roth claims that the plain language of § 15(a)(1) exempts him from any duty to register as a broker-dealer, since he was a "natural person … associated with a broker or dealer" when the six securities transactions in question took place. The SEC contends that § 15(a)(1)'s registration exemption for persons associated with a broker-dealer applies only if the person is acting within the "scope" of his or her association with the member firm. We evaluate Roth's statutory claim mindful of the fact that Congress delegated substantial authority to the Commission to set forth registration requirements for broker-dealers, and that an agency's interpretation of an ambiguous statute should be affirmed if reasonable and consistent with the statute's purpose. See Nuclear Info. Re-

source Serv. v. Nuclear Regulatory Comm'n, 969 F.2d 1169, 1173 (D.C.Cir.1992) (en banc).

The broker-dealer registration requirement serves as the "keystone of the entire system of broker-dealer regulation." Frank W. Leonesio, Exchange Act Release No. 23,-524, 36 SEC Docket 457, 464 (Aug. 11, 1986). A broker-dealer that has registered with the Commission is bound to abide by numerous regulations designed to protect prospective purchasers of securities, including standards of professional conduct, financial responsibility requirements, recordkeeping requirements, and supervisory obligations over broker-dealer employees. See generally David A. Lipton, A Primer on Broker–Dealer Registration, 36 Cath.U.L.Rev. 899 (1987). The interlocking requirements of registration and supervision act to ensure that "securities are [only] sold by a salesman who understands and appreciates both the nature of the securities he sells and his responsibilities to the investor to whom he sells." Persons Deemed Not to Be Brokers, Exchange Act Release No. 20,943 (May 9, 1984), 49 Fed.Reg. 20,512, 20,515 (1984).

The language of § 15(a)(1) does not make plain whether registered representatives like Roth are always exempt from registration as broker-dealers, or whether the exemption from broker-dealer registration extends only to those individuals subject to the supervisory relationship which normally accompanies association with a member firm. The SEC's resolution of this ambiguity is reasonable in light of the structure and evident purposes of the statutory scheme. Roth's contrary reading would leave the exemption with no reason to exist. Why would Congress exempt from registration those natural persons associated with a registered entity unless it reposed faith in the latter's supervision? If an individual is operating as a broker-dealer outside the course and scope of his employment, the employer's registration would seem to have little relevance.

The record clearly reflects that Roth conducted a private securities business completely separate from R.B. Marich's opera-

tions.[1] As Roth admitted in his submissions to the NASD, this arrangement allowed him to solicit clients and consummate transactions "autonomously," with "negligible" supervision from R.B. Marich and "without the licensing authority of a broker dealer." Roth's clients were accordingly deprived of the numerous regulatory protections afforded to purchasers and sellers of securities, either directly through broker-dealer registration or indirectly through a supervisory relationship with a member firm. Other circuits have found violations of the broker-dealer registration requirement when a securities salesman has acted outside the scope of his association with a member firm. *See, e.g., Securities & Exchange Comm'n v. Ridenour,* 913 F.2d 515, 517 (8th Cir.1990) (bond salesman violated § 15(a)(1) by engaging in a series of undisclosed, private securities transactions as part of private bond business of which member firm had no knowledge or opportunity to supervise).

Because the SEC's interpretation and application of § 15(a)(1) in this case were reasonable and Roth's remaining challenges are meritless, we deny Roth's petition for review.

*It is so ordered.*

Edward M. Joffe, Miami, FL, argued the cause for appellant. With him on the briefs were Gilbert L. Sandler and Arthur K. Purcell, Miami, FL. Ronald Wayne Gerdes, Washington, DC, and Peter W. Fudali, Miami, FL, entered an appearance.

David B. Orbuch, Asst. U.S. Atty., Washington, DC, argued the cause for appellees. With him on the brief were Eric H. Holder, Jr., U.S. Atty., John D. Bates, R. Craig Lawrence, and Jeffrey T. Sprung, Asst. U.S. Attys., Washington, DC.

**1.** Illustratively, Roth corresponded with clients on stationery bearing only his name, billed clients in his own name, received payment in that fashion, kept separate records of customer transactions, and maintained offices separate from those of Marich.